UNITED STATES of America

v.

Clayton J. LOGAN et al.

No. P–CR–76–20.

United States District Court, S. D. Illinois, N. D.

Dec. 13, 1976.

Robert J. Kauffman, Asst. U. S. Atty., Peoria, Ill., for plaintiff.

A. Curtis Neal, Amarillo, Tex., Jack A. Brunnenmeyer, Peoria, Ill., for defendants.

## DECISION AND ORDERS ON MOTIONS

ROBERT D. MORGAN, Chief Judge.

The defendants have been charged with violating the Federal Wire Fraud Statute, 18 U.S.C. § 1343. They move both for the suppression of evidence and the dismissal of the indictment because of allegedly illegal monitoring of defendants' telephone.

The evidence sought to be suppressed consists of tape recordings obtained by General Telephone Company of Illinois from its surveillance of the phone, and all statements and testimony obtained by the use of those tapes. The thrust of the defendants' position is that any statutory authorization which General Telephone had to engage in surveillance was exceeded by recording the contents of all incoming calls over a nine-day period, and that the FBI was so involved with the surveillance that it became a government search which failed to meet constitutional requirements.

The Government acknowledges that General Telephone did engage in surveillance of the defendants' phone, upon receiving a volunteer informer's tip that the defendants were using a calling scheme on collect long distance calls to transmit messages without paying the charges. The defendants' telephone line was monitored from July 24 through August 1, 1975, without any search warrant or specific wiretap authorization by a judge.

It is assumed, for the purposes of this opinion, that all incoming calls, both local and long distance, were recorded. After this period of surveillance and taping, by letter dated August 11, 1975, the telephone company informed the FBI of the case and made certain tapes and transcriptions of the tapes available to federal authorities, in response to Grand Jury subpoenas. The only tapes actually revealed had been edited by General Telephone employees to contain only certain incoming "collect" long distance phone calls which had been refused by defendants.[1]

---

1. The defendants' documents filed with the court assert, and it is accepted, that General Telephone personnel edited the tapes down to some 69 refused incoming long distance phone calls.

The issues in this case are (1) whether General Telephone was authorized[2] to engage in the electronic surveillance which it did, and to divulge the information obtained to the government authorities to the extent it did, and (2) whether there was sufficient government involvement to trigger the constitutional requirements for a valid search.

■ The recently decided case of *United States v. Auler,* 539 F.2d 642 (7th Cir. 1976), appears clearly to control this decision. As a general rule, the divulgence or publication by any person of interstate communication received by wire is prohibited. 47 U.S.C. § 605. However, the court in *Auler* observed that 18 U.S.C. § 2511(2)(a)(i)

"provides a telephone company with the power to protect its property through limited monitoring of the lines of suspected illegal users and the subsequent immunity to disclose necessary information to law enforcement agencies." *Auler, supra* (pp. 645–646).

■ General Telephone here clearly was entitled to protect its property by limited monitoring. The question then becomes whether General Telephone exceeded that authorization, as defendants contend.

The rationale of *Auler* is to limit authorized interceptions to those necessary in order for the telephone company to protect its rights or property. What is necessary in any given case must depend upon the type of scheme involved. In *Auler,* the phone company believed that a "blue box" was being used to bypass the company's billing apparatus. The court, speaking through Chief Judge Fairchild, stated:

"Therefore we think that any surveillance of a suspected blue box user must be restricted to a determination of (1) whether a blue box is being used; (2) the multifrequency tones of the number 'dialed' by the blue box; (3) whether the call was completed; (4) the duration of the call; and (5) the identity of the caller." *Auler, supra* (p. 646).

■ In the case at bar, General Telephone suspected that the defendants were conveying messages while avoiding billing. In an effort to determine whether such a scheme was being used, General Telephone monitored the incoming calls on the defendants' phone for nine days. Considering the type of scheme believed to be in use, the method employed by General Telephone may have been necessary to protect its rights or property and therefore authorized by the statute. It is not necessary to decide that broad issue, however, because even if the statutory authorization might be viewed as somewhat exceeded, it is clear that only information authorized by the statute was turned over to the authorities.[3] Lawful disclosures need not be suppressed, even though the private parties' total "search" might have been unreasonable. Whatever else may have been recorded, only tapes of incoming collect long distance phone calls which were not accepted were disclosed to the authorities. The recording and disclosure of those calls is quite clearly authorized by the statute as a necessary measure in this case. It would have been impossible to limit the surveillance to the salutations as in *Auler,* because in this case no completed call was made. The rule of *Auler,* to limit the statutory authorization to necessary surveillance, is well served here by allowing the disclosure of the refus-

---

**2.** 18 U.S.C. § 2511(2)(a)(i) provides:

"It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such com-

munication: *Provided,* That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks."

**3.** The court in *Auler* noted that "only evidence obtained through surveillance beyond the authorization of section 2511(2)(a)(i), which section 605 prohibits, must be suppressed." *Id.* at p. 646.

ed long distance calls. The material actually disclosed to the FBI in this case was authorized by the statute. *See also* 18 U.S.C. § 2517(3).

 The second argument advanced by the defendants is that the FBI was so involved in General Telephone's investigation that a government search resulted which failed to meet constitutional requirements. Under the rule of *Auler,* in order to prevail on this issue, the defendants must show that the Government was directly or indirectly engaged in gathering the alleged illegal surveillance. *Auler, supra* (p. 647). The record here is that the telephone company's surveillance was completed prior to any notification of the FBI. General Telephone employees may have edited the tapes after informing the FBI of their existence, but this does not even suggest government involvement in the surveillance. Because the surveillance in the instant case was conducted independently from any government direction or participation, it was not rendered an illegal government search. None of defendants' arguments or cited cases are persuasive in this regard.

██ Defendants argue strenuously that no court was asked to authorize the wiretap employed here, but the statutory sections dealing with court-authorized wiretaps are simply not applicable. Likewise, the argument that many long distance calls were accepted and phone bills were large, as well as the broad contention that General Telephone has not told the prosecutor the full story. These contentions, even if true, have no bearing on the supposed validity of these motions.

Accordingly, IT IS ORDERED that defendants' Motion to Suppress Evidence is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss Indictment, resting on the same arguments, is also DENIED.